MRS. SARAH K. GOODMAN, Admrx., v. EARL HICKS, et al.

Eastern Section. October 3, 1931.

Petition for Certiorari denied by Supreme Court, December 20, 1931.

Burrow & Burrow and Frank W. DeFriece, all of Bristol, for plaintiff in error.

J. L. Cantwell and Curtin & Haynes, all of Bristol, for defendant in error.

THOMPSON, J.   This is an action by Mrs. Sarah K. Goodman, as administratrix of the estate of Pauline Goodman, deceased, to recover damages from the defendants below, Earl Hicks and Charles Hicks, for wrongfully and negligently causing the death of plaintiff's said intestate.   At the trial in the court below the jury returned a verdict in favor of the defendants, and from the judgment on this verdict the plaintiff has appealed to this Court and has assigned errors.

The accident happened on Halloween night, October 31, 1929, and Pauline lived until July 2, 1930.   At the time of the accident she was about seventeen and one-half years of age.   She was employed at a medicine factory and earned from $8 to $9 per week.

The accident happened on State Street, between 8th and 9th Streets, in the city of Bristol, Virginia-Tennessee, at about 10:00 o'clock, P. M., or a few minutes later.   As stated, it was Halloween night and the streets were crowded both by pedestrians and automobiles.   However, at the time of the accident the crowds had thinned out to some extent.   Automobiles were parked along the curbs of the streets.   Other automobiles were being driven up and down the streets.   As is usual on such occasions many persons felt privileged to step onto the running boards of the passing cars, ride a block or two and then step off, etc., etc., and this was being done by numerous persons that night.

State Street between 8th and 9th Streets was forty-four feet wide between curbs, and there were a number of cars parked in said block on both sides of the street and parallel to said curbs. But there were

not as many cars passing up and down the street in this block as there were a few blocks further up the street and in other parts of the city. The boundary line between the States of Tennessee and Virginia extended along the center of State Street, and along the center of said street (marked by white lines) the fire lane extended. Just how wide this fire lane was does not clearly appear, but we suppose it was sufficiently wide for the fire engines, etc., to pass along.

The car which Earl Hicks (22 years of age) was driving belonged to his father, Charles Hicks, and was kept and used for family purposes, etc. It was a five passenger Buick sedan. There were three people in the back seat, and two in the front seat with Earl. There were also two boys or young men standing on the left running board and holding on to the left side of the car.

Pauline was standing on the left running board of a Ford roadster. There was also a boy or young man standing on said left running board. He was in front of Pauline. There were three people in the seat of said roadster and perhaps another person standing on the right running board.

Earl was driving eastwardly at a speed of ten or fifteen miles per hour. The car immediately in front of him slowed down to such a low rate of speed that Earl could not follow it in high gear. Thinking that he could pass it in safety, he shifted to second gear, blew his horn, pulled to his left, passed the car on its left and was turning back to his right into the line of traffic when the accident happened. He was on the Tennessee side of the street and the evidence conflicted as to whether his left wheels ever got beyond the center of the street and onto the Virginia side. They did, of course, go into the fire lane. At the time he started to pass the car in front of him he saw the Ford roadster but did not see the persons standing on its running boards. He thought that he had ample room and time in which to pass in safety.

The Ford roadster was going in the opposite direction, i. e., westwardly, and was on the Virginia side of the street. The cars themselves did not touch or come in contact with each other, and the evidence was conflicting as to how near to each other they did come—the defendants' evidence tending to show that they were not closer together than two feet. The boy or young man standing in front of Pauline on the left running board of the Ford was not struck, but one of the boys on the left running board of the Hicks car was in some way struck or caused to fall off into the center of the street and be injured. Pauline received a blow on the head and fell back onto the left rear fender of the Ford, but she did not fall off into the street.

Realizing that the boy on the left running board of his car had been injured and had fallen into the street, Earl pulled into the first

parking space he could find. He stopped his car and walked or ran back to where the boy was lying. The boy was put into another car and was taken to the hospital. Earl followed the car to the hospital and there he found out that Pauline had also been injured.

There were counts in the declaration based both upon the Tennessee and Virginia law, and as has been stated, the evidence conflicted as to whether the left wheels of Earl's car went over onto the Virginia side. The laws of Virginia, including the doctrine of the last clear chance, were proved by the testimony of Virginia lawyers. The trial court charged the jury among other things as follows:

"I instruct you, Gentlemen of the jury, as a matter of law, under the State of Virginia, if you find this deceased girl was riding on the running board of that car, and that by reason of her riding on that running board of that car she was struck by a passing car that it would be such negligence upon her part, by the riding upon the running board of that car, as would bar any recovery, and I instruct you the same rules would apply under the laws of the State of Tennessee, unless you find from all the facts and circumstances in this case that the doctrine of the last clear chance, that has been argued, applies to the case.

"In case of an accident, even though the plaintiff or deceased person for whom the suit is brought, was guilty of contributory negligence herself, and that the defendant was likewise guilty of negligence, and although the continuation of the negligence of either party might have continued right up to the very happening of the accident, yet if the proof shows and you find by a preponderance of the evidence that the defendant in driving that car saw this girl on the running board of another car—that he was driving his car in such way as to imperil her life in driving by or undertaking to pass that car, and that he saw that, or should have seen it in time to have slowed up or stopped and didn't do it, then her contributory negligence would not bar a recovery, but her contributory negligence would go in mitigation of damages, in other words, lessening the damages she would otherwise be entitled to recover."

Error is assigned on the first paragraph of the above quotation. One attack against said first paragraph is that the court failed to explain and define the doctrine of the last clear chance but left it to the jury to simply remember the arguments about it. Since the second paragraph of the quotation did define the doctrine of the last clear chance, and since said doctrine had been proven and explained before the jury by testimony of Virginia lawyers, we not think the jury could have failed to understand that in the second paragraph the court was explaining and defining said doctrine.

The other attack on the first paragraph of the quotation is that it in effect told the jury that if Pauline was standing on the running

board (which it was undisputed that she was) there could be no recovery. The court had in effect just previously told the jury that if Hicks was guilty of negligence which proximately caused the accident and Pauline was not guilty of negligence which proximately contributed to it, her administratrix would be entitled to a recovery. It will be observed that in said first paragraph the court in effect only told the jury that if Pauline was injured "by reason of" her standing on the running board there could be no recovery except under the doctrine of the last clear chance. This was, in effect, saying to the jury that if her standing on the running board proximately contributed to her injury there could be no recovery except under the doctrine of the last clear chance. This, as we understand the testimony, was as favorable to the plaintiff as she was entitled to under the laws of Virginia. And we think it was as favorable as she was entitled to under the laws of Tennessee. It seems to us that the fact that the streets were crowded with automobiles would make it more negligent to ride upon a running board than would ordinarily be the case. And the fact that it was Halloween night and that others were doing the same dangerous thing is, we think, immaterial.

Another attack on said first paragraph is that the declaration contained the allegation that defendant was driving his car "with no thought or care for the safety of others who were using and occupying said street," which plaintiff insists was equivalent to a charge of gross and wanton negligence, that the proof disclosed that Earl Hicks was guilty of gross and wanton negligence in driving his car as he did, etc., and therefore that the court should have told the jury that Pauline's contributory negligence was not a defense where the negligence of the defendant was gross and wanton, etc.

After examining the record and particularly the charge, the requests and the motion for new trial, we are of the opinion that at the trial neither the court nor any of the attorneys had in mind that gross and wanton negligence had been alleged or that such negligence had been proven or that plaintiff was entitled to a charge based on these assumptions. We do not think that gross and wanton negligence was in fact proven, and we notice that plaintiff made no requests based upon such assumption.

The remaining assignment of error is based on the action of the trial court in sustaining objections to questions asked the defendant, Earl Hicks, as to other automobile accidents had by him. After examining the record we are of the opinion that the plaintiff succeeded in getting into the minds of the jury more than she was entitled to in respect to other accidents had by Earl Hicks and in respect to his character as a driver. We feel confident that no reversible error was committed in the court's rulings on the evidence, and said assignment will be overruled.

It results that in our opinion there was no error in the judgment of the trial court and the same will be affirmed, with costs.

Portrum and Snodgrass, JJ., concur.